UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SHARI L. HARRELL,                                )
                                                 )
                               Plaintiff,        )
                                                 )
                 vs.                             )        No. 1:14-cv-01803-SEB-DML
                                                 )
CAROLYN W. COLVIN Commissioner of                )
the Social Security Administration,              )
                                                 )
                               Defendant.        )

## Report and Recommendation
## on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. §
636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its
appropriate disposition.  As addressed below, the Magistrate Judge recommends
that the District Judge AFFIRM the decision of the Commissioner of the Social
Security Administration that plaintiff Shari L. Harrell is not disabled.

## Introduction

Ms. Harrell applied on November 29, 2011, for Disability Insurance Benefits
(DIB) under Title II of the Social Security Act and Supplemental Security Income
(SSI) under Title XVI of the Social Security Act, alleging that she has been disabled
since January 1, 2003.   Acting for the Commissioner of the Social Security
Administration following a hearing on July 22, 2013, an administrative law judge
("ALJ") found that Ms. Harrell is not disabled.  The Appeals Council denied review
of the ALJ's decision on September 16, 2014, rendering the ALJ's decision for the

Commissioner final.  Ms. Harrell timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Harrell contends that the ALJ's determination that she is not disabled as a result of her mental impairments is not supported by substantial evidence.  In addition, Ms. Harrell argues that the ALJ erred in his determination that Ms. Harrell could perform her past work or other jobs.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Harrell's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A). Ms. Harrell is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Administrative Proceedings

Ms. Harrell was born in 1962 and was 40 years old on the alleged onset of her disability in January 2003.  At the hearing, impartial medical experts James Brooks, Ph.D., and Robert Sklaroff, M.D., testified.  An impartial vocational expert also testified.

At step one, the ALJ determined that Ms. Harrell had not engaged in substantial gainful activity since January 1, 2003, the alleged onset date.  At step two, the ALJ found Ms. Harrell had the following severe impairments: (1) mild degenerative disc disease; (2) dysthymia;[1] (3) hypertension; (4) hyperlipidemia; and (5) panic disorder with agoraphobia.  At step three, the ALJ concluded that Ms. Harrell did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

The ALJ determined Ms. Harrell had the residual functional capacity ("RFC") to perform less than the full range of light work, as defined in the regulations.  He found she could lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit up to six hours in an eight-hour workday.  She was never to climb ladders, ropes or scaffolds or work at dangerous heights or in close proximity to dangerous moving machinery.  He restricted her to work that required only occasional contact with others, consisting

---

[1] Dysthymia is also known as persistent depressive disorder.  Mayo Clinic, Persistent Depressive Disorder (dysthymia), http://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/home/ovc-20166590 (last visited Feb. 4, 2016).  Dr. Brooks characterized dysthymia as "a low-level chronic depression" in his testimony.  (R. 51).

of the general public, coworkers, and supervisors.  He also found Ms. Harrell could perform work involving both complex and simple, repetitive tasks.

At step four, the ALJ concluded Ms. Harrell was capable of performing her past relevant work as an inspector/hand packager.  Although the ALJ determined Ms. Harrell could perform her past relevant work, he also made alternative findings for step five and determined there were other jobs in the national economy that Ms. Harrell was able to perform.  Therefore, the ALJ found Ms. Harrell was not disabled.

<u>**Analysis**</u>

I.    <u>**Substantial evidence supports the ALJ's decision that Ms. Harrell was not disabled as a result of her mental impairments.**</u>

The ALJ evaluated Ms. Harrell's mental impairments against listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders).  Each of these listings requires, among other things, that the claimant's mental condition manifest itself at a level of severity measured by the same factors, called the "B" criteria.  A claimant whose mental impairment is not manifested at a level of severity tested by the B criteria may then look to the "C" criteria for a particular listing.  Ms. Harrell does not claim that she met the C criteria for the above listings, nor does she challenge the ALJ's decision that she did not meet them.  To satisfy the B criteria, Ms. Harrell's mental disorders must result in at least two of the following:

Marked restrictions of activities of daily living;

Marked difficulties in maintaining social functioning;

Marked difficulties in maintaining concentration, persistence, or pace ("CPP");

Repeated episodes of decompensation, each of extended duration.

A claimant is markedly limited in activities of daily living if her mental impairments cause "serious" difficulty in doing things such as cleaning, shopping, cooking, maintaining a residence, self-grooming and hygiene "on a consistent, useful, routine basis, or without undue interruptions and distractions." Listing 12.00(C)(1). Social functioning examines how the claimant gets along with others, including family members, friends, neighbors, co-workers, shopkeepers, and strangers. Marked impairment may be shown by the claimant's inability to act "independently, appropriately, and on a sustained basis" with others, evidenced by a history of altercations, firings, social isolation, or similar dysfunction, as opposed to "cooperative" behavior with others and a sense of social maturity. Listing 12.00(C)(2). CPP refers to a claimant's abilities to focus and concentrate long enough to complete tasks. Marked impairment may be shown where a claimant cannot sustain a level of concentration to complete even simple tasks without extra supervision or assistance. Listing 12.00(C)(3). In general, a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, effectively, and on a sustained basis." Listing 12.00(C).

The ALJ evaluated each B factor and explained the evidence he considered and relied upon in reaching his conclusions that Ms. Harrell had, at most, (a) mild

restrictions in her activities of daily living; (b) moderate difficulties in social functioning; (c) mild difficulties in maintaining CPP; and (d) no episodes of decompensation.

As to her daily living activities, the ALJ concluded that Ms. Harrell is only mildly limited because she denied having any problems with personal care and was able to prepare simple meals on a daily basis, clean, do laundry with some reminders, and some ironing.  She could both ride in and drive a car, drove her son to and from school daily, and followed up on his school work.  She spent time with her husband running errands and occasionally went to her daughter's gymnastic performances if someone else went with her.  She stated that she enjoyed reading and loved to cook.  (R.14).

As for difficulties in social functioning, the evidence was mixed, and the ALJ concluded that on the whole, Ms. Harrell suffered moderately in this area but not markedly.  The ALJ considered that Ms. Harrell reported she only went outside when she absolutely had to do so.  She shopped and was able to do so alone, but there were times she had to leave the store because of anxiety and panic attacks.  She reported mood swings, difficulty getting along with others, and difficulty controlling her anger and frustration.  She reportedly had difficulties with teachers, but stated she usually was able to get along with authority figures.  She visited her in-laws and attended her children's activities.  During a consultative examination in 2013, she generally related as depressed, irritable, and somewhat passive aggressive.  She claimed it was difficult for her to be around people, and her anxiety

around people began about four or five years ago.  However, she had a positive relationship with her husband and five children, she indicated she had a relatively stable work history, and she believed she generally related adequately to coworkers and supervisors.  The ALJ acknowledged Ms. Harrell's testimony that she "hated people" and being around other people caused anxiety and made her nervous, as well as that she got angry easily and "g[ot] herself into trouble by 'going off.'"  (R.14-15).

With respect to CPP, the ALJ determined Ms. Harrell had mild difficulties.  Although she reported difficulties in handling a savings account and using a checkbook, she also reported being able to pay bills and count change.  She said she had trouble paying attention, following instructions, and finishing tasks.  While she had some difficulty with Serial 7's in a consultative exam in 2013, she correctly solved all calculations given to her.  At that examination, Ms. Harrell was fully oriented and her memory was intact, and the examiner found her concentration and attention appeared only "mildly impaired."   She could understand and follow simple instructions, and her "level of intellectual functioning was estimated to be within the average range."  (R. 15).

As to the last B factor, the ALJ found that Ms. Harrell had not experienced any episodes of decompensation of extended duration.

The above findings of the absence of any marked limitations or repeated episodes of decompensation are supported by the opinion of impartial medical expert Dr. James Brooks, who testified at the hearing and had reviewed the entire

record.  Ms. Harrell argues that Dr. Brooks "selectively considered" the evidence, omitted certain findings by consultative examiner Dr. Kurzhals in his testimony, noted "irrelevant cardiac records" in his testimony, effectively "overruled" the findings of Dr. Kurzhals, and "rejected the validity of the GAF 48 [sic] found by Dr. Kurzhals as indicating her inability to keep a job."  Ms. Harrell also maintains that the ALJ "attempted to evade the well established precedent of the Treating-examining [sic] physician rule which requires the ALJ to grant controlling weight to a treating or examining physicians' opinion, such as that of Dr. Kurzhals."

Contrary to Ms. Harrell's characterization, only the opinions of *treating* sources are entitled to controlling weight where certain conditions are met.  20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).  *See also* Social Security Ruling 96-2p, 1996 WL 374188, *1, *2 (July 2, 1996) ("[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'").  As the ALJ explained, consultative examiners have the opportunity to examine the claimant but do not have a longitudinal relationship with the claimant or necessarily the opportunity to review the entire record or hear testimony.  (R. 16).  Ms. Harrell's treating sources for her mental issues, Dr. Wiseman and Dr. Faidley, did not opine as to her ability to work, did not assign her GAF scores, and did not opine as to her limitations in social functioning.  While Dr. Kurzhals examined Ms. Harrell during a consultative exam, Dr. Brooks had the opportunity to review the entire record.  (R. 28).

The ALJ devoted approximately 14 pages of his opinion to a discussion of the medical evidence, and the majority of this discussion focused on evidence relating to

10

Ms. Harrell's mental impairments.  The ALJ specifically discussed Dr. Kurzhals's opinion and Medical Source Statement of Ability to Do Work Related Activities (Mental).  (R. 23).  The ALJ stated that Dr. Kurzhals opined that Ms. Harrell "would have marked limitations with interacting appropriately with the public, supervisors, and coworkers, as well as responding appropriate [sic] to usual work situations and to changes in routine work setting due to her anger and irritability." (*Id.*).  As the ALJ summarized in his opinion, Dr. Brooks testified "that Dr. Kurzhal's [sic] opinion that the claimant would be markedly limited in her ability to interact appropriately with supervision, coworkers, and the public was due to her anger and irritability. . ., rather than by anxiety or depression."   (R. 25, 53, 56) (internal citations omitted).

While it is true that Dr. Brooks referred to some non-psychiatric records in his testimony, both he and the ALJ acknowledged them as such.  (R. 23-24, 53-54).[2] Furthermore, this was not the only evidence included in Dr. Brooks's testimony as the basis for his conclusions regarding Ms. Harrell's mental condition.  (R. 21-28, 50-59).  The ALJ ultimately gave Dr. Brooks's testimony and opinion "great weight as not inconsistent with the objective medical evidence or other substantial evidence of record."  (R. 28).  Even assuming it was error for the ALJ to credit Dr. Brooks's moderate finding over Dr. Kurzhals's marked finding, any such error would be harmless, because the B criteria would still not be met.  Ms. Harrell was not

---

[2] Dr. Brooks characterized these records as "not psychiatric altogether" and "not strictly psychiatric records."  (R. 53-54).  The ALJ characterized these records as "non-psychiatric."  (R. 23-24).

markedly impaired in her activities of daily living or CPP, nor did she have any repeated episodes of decompensation, each of extended duration.

Ms. Harrell makes much of her GAF score of 48 assigned by Dr. Kurzhals. She asserts that this GAF score "indicated it was his opinion that she would not be able to keep a job." First, Dr. Brooks "strongly disagreed" with this characterization at the hearing, and testified "that if a person is unable to keep a job, they could get a 48, not the other way around. . . ." (R. 25, 57-58). The ALJ credited Dr. Brooks's testimony on this issue. (*See* R. 28.) Second, the ALJ gave appropriate attention to the GAF score assigned by Dr. Kurzhals. GAF scores are intended to assist a clinician's formulation and implementation of a mental health treatment plan, but they have no direct application to deciding "marked" difficulties under the B factors and are not proxies for deciding presumptive disability at step three. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Wilkins v. Barnhart*, 69 Fed. Appx. 775 at *4 (7th Cir. 2003) (cited by *Denton*) (stating that ALJ was not required to mention a GAF score of 40 because GAF score is designed to influence treatment decisions and not to measure disability under the Social Security Act).

Dr. Brooks's expert opinion, as well as the ALJ's reasoned analysis of the evidence pertinent to the four B factors, constitute substantial evidence that supports the ALJ's decision at step three that Ms. Harrell is not presumptively disabled by her mental impairments. The court may not reweigh the evidence, and Ms. Harrell cannot point to any line of evidence that the *ALJ* failed to consider that decidedly detracts from his findings. *See Jones v. Astrue,* 623 F.3d 1155, 1162 (7th

Cir. 2010) (ALJ is not required to discuss every piece of evidence but is "prohibited only from ignoring an entire line of evidence that supports a finding of disability"). Although Ms. Harrell makes much of omissions in Dr. Brooks's testimony, the ALJ reviewed all of the evidence and discussed her medical records at length in his decision. There is no error.

## II.    Substantial evidence supports the ALJ's determination that Ms. Harrell could perform her past relevant work and other work.

The entirety of Ms. Harrell's argument on this point (other than reciting a general legal principle and a string cite of cases) is as follows:

> Thus, Dr. Dunaway MD determined the claimant was not able to perform the standing, walking or sitting functions required for any full time employment. (R. 345-354)[.] These impairments were not mentioned, however, to the vocational expert. The ALJ's residual functional capacity assessment (R. 16) omitted all of the Marked limitations due to her quite severe mental impairments.

The court will address each of these points in turn.[3]

In an April 2013 consultative examination, Dr. Dunaway determined that Ms. Harrell could sit for four hours in an eight-hour workday, stand for one hour in an eight-hour workday, and walk for one hour in an eight-hour workday. The impartial medical expert, Dr. Sklaroff, testified that Ms. Harrell was capable of a range of light work. (R. 20). Counsel for Ms. Harrell specifically questioned Dr. Sklaroff regarding Dr. Dunaway's opinion. Dr. Sklaroff testified he disagreed with Dr. Dunaway's conclusions because "there [was] no objective data to support these

---

[3] Although the Commissioner argues that Ms. Harrell has waived any argument relating to her physical impairments, the cases the Commissioner cites in support are inapposite and her waiver argument is not well taken.

limitations other than the claimant's subjective complaints of pain and fatigue." (R. 20-21, 49). He also testified that his opinion actually was supported by Dr. Dunaway's own clinical findings, including that Ms. Harrell's gait was stable and within normal limits. (R. 21, 47). Ms. Harrell could walk on bilateral heels and toes briefly and she could stand on either leg alone (although only briefly on the right). (*Id*.). While she could not perform a full squat without difficulty, Dr. Sklaroff testified that there was no explanation why she could not squat. (*Id*.). "Neurologically, he stated that the claimant was 'clean.'" (R. 21).

The ALJ is required only to include in his hypothetical to a vocational expert those limitations that he found were credible and supported by the medical evidence. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) (ALJ "required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible."). While it is true the ALJ did not include Dr. Dunaway's limitations in his hypotheticals to the vocational expert, it is not true that this information was not "mentioned . . . to the vocational expert" as Ms. Harrell asserts. In fact, counsel for Ms. Harrell specifically questioned the vocational expert about these limitations. (R. 70-71).[4] In his opinion, the ALJ stated: "This decision specifically declines to adopt the representative's modifications to the [RFC] reflected in his hypotheticals to the vocational expert because they are not supported by the medical evidence and claimant testimony alone is inadequate to support such restrictive limitations." (R. 31).

---

[4] The hypothetical posed by counsel for Ms. Harrell included mental limitations as well as physical limitations. (R. 70-71).

In his opinion, the ALJ noted that the state agency physicians found no severe physical impairment.  (R. 16).  He discussed the medical evidence relating to Ms. Harrell's back problems at length.  (R. 18-21).  However, the ALJ proceeded to limit Ms. Harrell to less than the full range of light work, finding this RFC to "be more appropriate" in light of her combination of impairments.  (R. 16).

With respect to Ms. Harrell's argument that the RFC "omitted all of the Marked limitations due to her quite severe mental impairments," as discussed above, the ALJ did not find Ms. Harrell had marked limitations in social functioning.  The ALJ limited Ms. Harrell to work that involves only occasional contact with others, consisting of the general public, coworkers, and supervisors to accommodate the moderate impairments in social functioning that he did find supported by the record.  (R. 14-16, 26).  Ms. Harrell has not identified how or why the ALJ's limitations in the RFC did not sufficiently address her mental limitations, nor has she offered any additional limitations that should have been included in the RFC.

Ms. Harrell's assertions of error regarding the ALJ's alleged failure to consider the extent of her ability to perform regular and continuing work at steps four and five fail because they are, at bottom, requests that the court reweigh the evidence.  That task is inappropriate for the court to undertake.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Ms. Harrell is not disabled.

15

Case 1:14-cv-01803-SEB-DML   Document 28   Filed 02/05/16   Page 16 of 16 PageID #: 843

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date:  February 5, 2016

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system